## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RYAN ALEXANDER KLUNK,**

    **Plaintiff,**

**v.**                        **CASE NO:**

**GRILLSMITH 105 LLC, d/b/a GRILLSMITH**

**WESLEY CHAPEL,**

    **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RYAN ALEXANDER KLUNK, (hereinafter "Plaintiff" or "Mr. Klunk"), by and through the undersigned counsel, hereby sues Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL (hereinafter "Defendant," "Grillsmith," or "Company") and alleges:

### INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and race, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII") and its implementing Regulations; Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"); and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA").

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability and race, and retaliated against him in violation of his rights under the ADA, Title VII, and the FCRA. Plaintiff further alleges that Defendant violated the FLSA by failing to pay him for all hours worked, including remote work performed from his home.

3.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pasco County, Florida.

## PARTIES

8.     Plaintiff is RYAN ALEXANDER KLUNK, a 45-year-old white male who has been diagnosed with severe anxiety and depression. Mr.

Klunk resides in Hillsborough County, Florida.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on his disability and race under the ADA, Title VII, and the FCRA.

10.    During the period from June 2019 until August 16, 2024, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, Title VII, the FCRA, and the FLSA.

13.    The Defendant is GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, a Florida Limited Liability Company with a principal place of business located at 2000 Piazza Ave #100, Wesley Chapel, FL 33543.

14.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pasco County, Florida, operating a restaurant establishment with over forty (40) employees at the Wesley Chapel location and over one hundred (100) employees within a seventy-

five (75) mile radius.

15.    Defendant operates five (5) restaurant locations throughout Florida and also operates through Paychex PEO IX LLC as a Professional Employer Organization.

16.    At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADA, Title VII, the FCRA, and the FLSA.

17.    Accordingly, Defendant is liable under the ADA, Title VII, the FCRA, and the FLSA for the unlawful discrimination, retaliation, and wage violations to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

18.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

19.    On October 11, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race and disability discrimination as well as retaliation.

20.    On August 1, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2025-00100) against Defendant.

21.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23.    Mr. Klunk suffers from severe anxiety and depression, conditions for which he has been prescribed several medications including Alprazolam to combat symptoms and manage work-related anxiety. Mr. Klunk's disability significantly impacts major life activities and substantially limits his ability to function in stressful work environments.

24.    In June 2019, Mr. Klunk began working for Defendant as a server at their Wesley Chapel location. At the time of hire, Mr. Klunk's initial

compensation was $8.00 per hour plus tips for on-site work and $10.00 per hour for remote work performed from his home.

25.    Mr. Klunk disclosed his criminal history to Defendant during the hiring process, including felony drug charges and misdemeanor drug charges, which Defendant accepted.

26.    In October 2019, just four months after his hire, Mr. Klunk was promoted to Banquet Captain/Manager by Brandon Bean and Matthew Thorpe in recognition of his excellent performance and capabilities.

27.    As Banquet Captain, Mr. Klunk's job duties included managing reservations for private dining events, initiating contact with potential guests, confirming room availability and special requests, setting and negotiating contract minimums, preparing contracts, setting up the private dining room, and waiting on dining guests.

28.    Mr. Klunk excelled in his role as Banquet Captain, ultimately accomplishing over $500,000 in sales from 2019–2024, making him the highest-grossing Banquet Captain of all five Grillsmith locations. He maintained an 80% repeat customer rate and received no customer complaints during his 6+ years of employment.

29.    Throughout his employment, Mr. Klunk was required to

perform substantial remote work from his home using his personal equipment, including his cell phone, laptop, and printer. After COVID-19, his work-from-home hours increased significantly.

30.    Between 2021 and 2024, Mr. Klunk logged 4,561 hours of remote work at the direction of Defendant's management. Although he submitted his hours weekly by text to management, Defendant routinely failed to compensate him. Based on his documented records, Mr. Klunk is owed approximately $25,900 in unpaid remote work wages.

31.    Mr. Klunk observed that counterparts at other Grillsmith locations were paid for their remote hours, creating a discriminatory pay disparity. This inequitable treatment caused Mr. Klunk significant anxiety and stress, exacerbating his underlying mental health conditions.

32.    In March 2023, Defendant assigned Izzy Arroyo as Mr. Klunk's new Managing Partner and direct supervisor. At this time, Mr. Klunk received a raise to $11.00 per hour plus tips for on-site work and $15.00 per hour for remote work.

33.    Starting immediately in March 2023, Mr. Arroyo began making racist remarks every time Mr. Klunk worked with him. Mr. Arroyo regularly referred to Mr. Klunk as "white motherfucker" and stated he wanted to "fire

my white ass."

34.    Mr. Arroyo explicitly stated his discriminatory intent, telling others "I want an all-Puerto Rican staff. Fuck that white boy" in reference to Mr. Klunk.

35.    Kitchen staff, following Mr. Arroyo's lead, also made racist remarks toward Mr. Klunk, creating a hostile work environment permeated with racial animus.

36.    Mr. Klunk reported the discriminatory behavior to Mr. Arroyo multiple times, but his complaints were ignored and dismissed, demonstrating Defendant's deliberate indifference to the hostile work environment.

37.    Mr. Arroyo and other employees had direct knowledge of Mr. Klunk's medical condition and disability. The hostile work environment significantly exacerbated Mr. Klunk's anxiety and depression, requiring him to increase his use of prescribed medication to cope with the work-related stress.

38.    Despite Mr. Klunk's hopes that the situation would improve, Mr. Arroyo continued his pattern of discriminatory conduct. When Mr. Klunk informed Mr. Arroyo about his unpaid remote hours, Mr. Arroyo laughed

at him and told him to take the payment issues up with President Ross Hughes.

39.    Mr. Arroyo bragged that he and his wife were paid for remote work when they were Banquet Captains at the Clearwater location, further demonstrating the discriminatory nature of Mr. Klunk's treatment.

40.    On January 31, 2024, Mr. Arroyo issued Mr. Klunk a verbal warning for paying a busser to clean tables, despite Mr. Klunk being unaware that this violated any company policy.

41.    In July 2024, Defendant hired Shane as the new Service Manager. When Mr. Klunk told Shane about his unpaid remote hours, Shane ensured that Mr. Klunk received payment for 12 hours of remote work.

42.    On August 13, 2024, when Mr. Arroyo returned from vacation and discovered that Mr. Klunk had been paid for 12 remote hours, Mr. Arroyo called Mr. Klunk screaming and accused him of "going over his head."

43.    On the evening of August 13, 2024, a customer incident occurred where a customer requested a menu change. Mr. Klunk followed company policy requiring manager approval and contacted Mr. Arroyo with the customer's information.

44.    When Mr. Arroyo failed to call the customer back in a timely manner, the customer became upset, made belching noises approximately twenty times, and hung up on Mr. Klunk.

45.    Mr. Arroyo blamed Mr. Klunk for the customer's behavior, telling him "Ryan, you really fucked up this time" and sent him a threatening text message stating: "Ryan, we are done. Ross knows everything already. Do not come to this building. If you do, authorities will be called."

46.    On August 14, 2024, Mr. Arroyo texted Mr. Klunk: "Ryan, let's talk on Friday at 3. Come in and see me."

47.    On August 16, 2024, Mr. Klunk attended a termination meeting with Mr. Arroyo and Shane. During this meeting, Mr. Arroyo called Mr. Klunk "racist" and said he "don't listen."

48.    The termination notice falsely stated that Mr. Klunk "mishandled a guest's request due to their religion," which was a complete fabrication designed to provide pretext for the discriminatory termination.

49.    When Mr. Klunk asked if the termination was related to his complaint about "going over his head" regarding remote hours payment, Mr. Arroyo "sat back in a cocky manner, smirked, and did not reply," clearly indicating the retaliatory nature of the termination.

50.    Mr. Klunk refused to sign the termination notice because it contained false statements about the circumstances of his termination.

51.    Both Mr. Arroyo and Shane promised to provide Mr. Klunk with a letter of recommendation but never followed through on this promise.

52.    On August 22, 2024, Mr. Klunk had a telephone conversation with President Ross Hughes, who said the restaurant was "going in a different direction" and that the termination was "probably for the best." Mr. Hughes never contacted the customer to corroborate the statements in the termination notice.

53.    When Mr. Klunk mentioned his unpaid hours and stated he was getting an attorney, Mr. Hughes said he couldn't speak anymore and abruptly hung up on him.

54.    As a direct result of Defendant's discriminatory and retaliatory conduct, Mr. Klunk lost his vehicle and $10,000 in equity, accumulated $6,500 in credit card debt, and suffered severe psychological trauma and financial hardship.

55.    Mr. Klunk's depression and anxiety substantially worsened following his termination, and his 6.5 years of working for Grillsmith were "completely tainted" by the discriminatory treatment he endured.

56.    On January 17, 2025, Mr. Klunk prevailed in his unemployment appeal, with the unemployment determination finding that there was no competent and substantial evidence to show misconduct connected with work.

57.    Mr. Klunk is currently not employed and has experienced difficulty securing new employment due to the damage to his career prospects and reputation caused by Defendant's unlawful conduct.

<u>COUNT I</u>
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Discrimination based on Disability**
**42 U.S.C. §§ 12101-12213**

58.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.    Plaintiff is a 45-year-old white male who has been diagnosed with severe anxiety and depression, conditions for which he has been prescribed several medications including Alprazolam to combat symptoms and manage work-related anxiety.

60.    At all times material herein, Plaintiff's severe anxiety and depression substantially limited one or more major life activities, including

but not limited to his ability to function in stressful work environments, his mental and emotional well-being, and his capacity to perform job-related tasks under adverse conditions.

61.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

62.     At all times material herein, Defendant employed, and continues to employ, fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the ADA. 42 U.S.C. § 12111(5)(A).

63.     Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

64.     At all times material herein, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

65.     Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace based on his disability.

66.     However, Plaintiff was subjected to discriminatory treatment at

the hands of his supervisors, particularly Izzy Arroyo, who created and maintained a hostile work environment that significantly exacerbated Plaintiff's anxiety and depression.

67.　Mr. Arroyo and other employees had direct knowledge of Plaintiff's medical condition and disability, yet deliberately created conditions that worsened Plaintiff's symptoms and required him to increase his use of prescribed medication.

68.　The hostile work environment, including racist remarks, unequal treatment regarding pay for remote work, and deliberate targeting by supervisors, materially altered the terms and conditions of Plaintiff's employment and was particularly harmful given his disability-related vulnerabilities to stress and anxiety.

69.　Plaintiff believed that his supervisors' offensive acts materially altered the terms and conditions of his employment. Further, a reasonable person would have found that the offensive acts of Plaintiff's supervisors materially altered the terms and conditions of Plaintiff's employment.

70.　Plaintiff did not welcome the discriminatory treatment and did not directly or indirectly invite or solicit it by his own acts or statements.

71.　At all times material herein, Defendant knew, or in the exercise

of reasonable care should have known, about the discrimination against Plaintiff based on his disability, but did not take prompt remedial action.

72. Defendant violated the ADA by subjecting Plaintiff to discrimination because of his disability by creating and maintaining a hostile work environment that disproportionately impacted his mental health conditions and ultimately terminating his employment in a discriminatory manner.

73. Further, Defendant failed to prevent and promptly correct workplace discrimination based on disability. Defendant's supervisors, managers, and personnel who learned about the objectionable workplace conduct and discrimination failed to promptly take steps to correct this conduct.

74. The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the ADA.

75. Defendant's actions constitute discrimination in violation of the ADA.

76.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, discriminating against Plaintiff based on his disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination

to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA;

D.    Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation
### 42 U.S.C. §§ 12101-12213

77.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

78.     Plaintiff is a 45-year-old white male who has been diagnosed with severe anxiety and depression, conditions for which he has been prescribed several medications including Alprazolam.

79.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

80.     Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

81.     At all times material herein, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

82.     Plaintiff engaged in protected activity under the ADA by suffering from a disability (severe anxiety and depression) that was known to Defendant's management and by continuing to work despite the hostile

environment that exacerbated his disability-related symptoms.

83.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to creating a hostile work environment, denying him equal pay for remote work, and ultimately terminating his employment, in retaliation for his disability status and his resistance to the discriminatory treatment that worsened his mental health conditions.

84.    The timing and circumstances of Defendant's adverse actions, particularly the escalation of discriminatory conduct by Mr. Arroyo and the ultimate termination, demonstrate a retaliatory motive related to Plaintiff's disability.

85.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation under the ADA.

86.    As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace based on his disability.

87.    Defendant violated the ADA by, among other things, failing to

promptly correct the retaliatory conduct toward Plaintiff once it learned of it and by actively participating in conduct that retaliated against Plaintiff because of his disability status.

88. Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

89. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the ADA.

90. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the ADA, according to proof.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.  Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff because of his disability;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.  Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused

by Defendant's retaliatory conduct and actions pursuant to the ADA;

D.     Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Race Discrimination
### 42 U.S.C. § 2000e et seq.

91.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

92.     Plaintiff is a 45-year-old white male.

93.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

94.    At all times material herein, Defendant employed, and continues to employ, fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

95.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

96.    At all times material herein, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

97.    Starting in March 2023, when Izzy Arroyo became Plaintiff's Managing Partner and direct supervisor, Plaintiff was subjected to severe and pervasive racial harassment and discrimination based on his race (white).

98.    Mr. Arroyo regularly made racist remarks directed at Plaintiff, including but not limited to referring to Plaintiff as "white motherfucker" and stating he wanted to "fire my white ass."

99.    Mr. Arroyo explicitly expressed his discriminatory intent by

stating "I want an all-Puerto Rican staff. Fuck that white boy" in reference to Plaintiff.

100.    Kitchen staff, following Mr. Arroyo's lead, also made racist remarks toward Plaintiff, creating a workplace environment permeated with racial hostility.

101.    The racial harassment was severe, pervasive, and created an objectively hostile work environment that materially altered the terms and conditions of Plaintiff's employment.

102.    Plaintiff reported the discriminatory behavior to Mr. Arroyo multiple times, but his complaints were ignored and dismissed, demonstrating Defendant's deliberate indifference to the racial harassment.

103.    During Plaintiff's termination meeting, Mr. Arroyo called Plaintiff "racist," further demonstrating the racial animus underlying Defendant's treatment of Plaintiff.

104.    Defendant knew or should have known of the racial harassment and discrimination suffered by Plaintiff through his direct reports to management.

105.    Defendant violated Title VII by subjecting Plaintiff to racial harassment and discrimination and by failing to promptly investigate and

correct the discriminatory conduct.

106.   Defendant also discriminated against Plaintiff based on his race by treating him differently with respect to compensation, specifically denying him payment for remote work hours while paying employees of other races for similar work.

107.   The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the racial harassment and discrimination of Plaintiff, deprived him of statutory rights under Title VII.

108.   Defendant's actions constitute racial discrimination and harassment in violation of Title VII.

109.   As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and

other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by discriminating against and harassing Plaintiff based on his race;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the racial discrimination and harassment to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the

nature, extent, and duration of the damages caused by Defendant's racial discrimination and harassment pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Race Retaliation
### 42 U.S.C. § 2000e et seq.

110.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

111.    Plaintiff is a 45-year-old white male.

112.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

113.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

114.    At all times material herein, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

115.    Plaintiff engaged in protected activity under Title VII by reporting and complaining about the racial harassment and discrimination he was experiencing from Mr. Arroyo and other employees.

116.    Plaintiff repeatedly reported to Mr. Arroyo the discriminatory behavior and racist remarks being made against him, which constituted protected opposition to unlawful employment practices under Title VII.

117.    In retaliation for Plaintiff's complaints about racial discrimination, Defendant subjected Plaintiff to adverse employment actions, including but not limited to: continued escalation of the hostile work environment, denial of equal compensation for remote work, threats of termination, and ultimately wrongful termination.

118.    The timing and circumstances of Defendant's adverse actions

demonstrate a clear causal connection between Plaintiff's protected activity (complaining about racial discrimination) and the retaliatory conduct.

119.  When Plaintiff complained about being paid unequally for remote work compared to employees of other races, Mr. Arroyo retaliated by becoming increasingly hostile and ultimately engineering Plaintiff's termination.

120.  The pretextual nature of Plaintiff's termination, allegedly for "mishandling a guest's request due to their religion," demonstrates that the true reason for termination was retaliation for his complaints about racial discrimination.

121.  The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation under Title VII.

122.  As his employer, Defendant was obligated to guard against retaliation against Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant for engaging in protected activity under Title VII.

123.  Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity, including but not limited to complaining

about racial discrimination and harassment.

124. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent retaliation against Plaintiff, deprived him of statutory rights under Title VII.

125. As a direct, proximate, and foreseeable result of Defendant's aforementioned retaliatory actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under Title VII, according to proof.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations by retaliating against Plaintiff for engaging in protected activity;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## FLORIDA STATUTES §§ 760.01-11
## Disability Discrimination

126.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

127.   Plaintiff is a 45-year-old white male who has been diagnosed with severe anxiety and depression, conditions for which he has been prescribed several medications including Alprazolam.

128.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

129.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual,

association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

130.   At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

131.   Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace based on his disability.

132.   However, Plaintiff was subjected to discrimination because of his disability (severe anxiety and depression) through discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents.

133.   The discrimination based on Plaintiff's disability included creating and maintaining a hostile work environment that significantly exacerbated his anxiety and depression, requiring him to increase his use of prescribed medication, and ultimately terminating him in a manner that

disproportionately impacted his mental health conditions.

134. Plaintiff believed that Defendant's discriminatory behavior based on his disability altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

135. Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment based on his disability and did not directly or indirectly invite or solicit them by his own acts or statements.

136. At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination suffered by Plaintiff based on his disability, but did not take prompt remedial action to eliminate the discriminatory behavior.

137. Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his disability and by failing to promptly correct it once it learned of it.

138. Plaintiff, by being subjected to this discrimination created by Defendant based on his disability, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

139. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

140. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant

has violated the FCRA by discriminating against Plaintiff based on his disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

### COUNT VI
### VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### FLORIDA STATUTES §§ 760.01-11
### Race Discrimination

141.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

142.  Plaintiff is a 45-year-old white male.

143.  At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

144.  Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any

other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

145.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

146.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace based on his race.

147.    However, Plaintiff was subjected to discrimination because of his race (white) through discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents.

148.    The discrimination based on Plaintiff's race included subjecting him to severe and pervasive racial harassment, including racist remarks by Mr. Arroyo who called him "white motherfucker," stated he wanted to "fire my white ass," and declared "I want an all-Puerto Rican staff. Fuck that white boy."

149.    Plaintiff believed that Defendant's discriminatory behavior based on race materially altered the terms and conditions of his employment. Further, a reasonable person would have found that

Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

150.   Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment based on his race and did not directly or indirectly invite or solicit them by his own acts or statements.

151.   At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination suffered by Plaintiff based on his race, but did not take prompt remedial action to eliminate the discriminatory behavior.

152. Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his race and by failing to promptly correct it once it learned of it.

153.   Plaintiff, by being subjected to this discrimination created by Defendant based on his race, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

154.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him

of statutory rights under the FCRA.

155.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's

discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.   Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.   Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.   Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT VII
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## FLORIDA STATUTES §§ 760.01-11
## Retaliation

156.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

157.   Plaintiff is a 45-year-old white male who has been diagnosed with severe anxiety and depression, conditions for which he has been prescribed several medications including Alprazolam.

158.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

159.   Moreover, Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

160.   At all times material herein, Defendant employed Plaintiff as a server and later as Banquet Captain/Manager.

161.  Plaintiff engaged in protected activity under the FCRA by complaining about and opposing discrimination based on both his disability and his race.

162. Specifically, Plaintiff reported to management the discriminatory behavior and racist remarks being made against him, and he continued to work despite the hostile environment that exacerbated his disability-related symptoms.

163. In retaliation for Plaintiff's protected activity, Defendant subjected Plaintiff to adverse employment actions, including but not limited to: escalation of the hostile work environment, denial of equal compensation for remote work, threats, and ultimately wrongful termination.

164. The timing and circumstances of Defendant's adverse actions demonstrate a clear causal connection between Plaintiff's protected activity and the retaliatory conduct.

165. When Plaintiff complained about unequal treatment regarding remote work pay and reported the racial harassment, Mr. Arroyo retaliated by intensifying the hostile environment and ultimately engineering Plaintiff's termination under false pretenses.

166. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation under the FCRA.

167. As his employer, Defendant was obligated to guard against retaliation against Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant for engaging in protected activity under the FCRA.

168. Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity related to both disability and race discrimination.

169. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent retaliation against Plaintiff, deprived him of statutory rights under the FCRA.

170. As a direct, proximate, and foreseeable result of Defendant's aforementioned retaliatory actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses

proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff for engaging in protected activity related to disability and race discrimination;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.   Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature,

extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VII
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### Unpaid Wages
### 29 U.S.C. § 201 *et seq.*

171.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

172.   At all times material herein, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), in that it was a person acting directly or indirectly in the interest of an employer in relation to an employee.

173.   At all times material herein, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), in that he was employed by an enterprise engaged in commerce or in the production of goods for commerce.

174.   At all times material herein, Defendant was engaged in interstate commerce and/or the production of goods for interstate commerce and had gross annual sales in excess of $500,000.

175.   Throughout his employment from June 2019 until August 16, 2024, Plaintiff was required to perform substantial remote work from his home using his personal equipment, including his cell phone, laptop, and printer.

176.   After COVID-19, Plaintiff's work-from-home hours increased significantly, yet Defendant regularly failed to compensate him for this remote work time.

177.   Between 2021 and 2024, Plaintiff performed approximately 4,561

hours of remote work as instructed by Defendant's management, but was not paid for this time.

178.   Plaintiff kept detailed logs of his remote hours as instructed by management and submitted these hours to his supervisor every Monday via text message.

179.   Despite Plaintiff's diligent record-keeping and regular submission of remote work hours, Defendant willfully failed to pay Plaintiff for all hours worked, specifically failing to compensate him for remote work performed from his home.

180.   Plaintiff observed that counterparts at other Grillsmith locations were paid for their remote hours, demonstrating that Defendant's failure to pay Plaintiff was discriminatory and willful.

181.   Mr. Arroyo, Plaintiff's supervisor, bragged that he and his wife were paid for remote work when they were Banquet Captains at the Clearwater location, further evidencing Defendant's knowledge of the requirement to pay for remote work.

182.   When Plaintiff informed Mr. Arroyo about his unpaid remote hours, Mr. Arroyo laughed at him and told him to take the payment issues up with President Ross Hughes, demonstrating Defendant's willful

disregard for its FLSA obligations.

183.   In July 2024, when Plaintiff informed new Service Manager Shane about his unpaid hours, Shane ensured that Plaintiff received payment for 12 hours of remote work, confirming that Defendant recognized its obligation to pay for remote work.

184.   When Mr. Arroyo discovered that Plaintiff had been paid for 12 remote hours, he called Plaintiff screaming and accused him of "going over his head," demonstrating retaliatory conduct for Plaintiff's wage claim.

185.   Based on Plaintiff's detailed time logs, Defendant owes Plaintiff approximately $25,900 in unpaid wages for remote work performed during his employment.

186.   Defendant's conduct was willful within the meaning of the FLSA in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

187.   As a result of Defendant's willful violations of the FLSA, Plaintiff is entitled to liquidated damages equal to the amount of unpaid wages pursuant to 29 U.S.C. § 216(b).

188.   Defendant's failure to pay Plaintiff for all hours worked violated the FLSA and deprived Plaintiff of wages to which he was lawfully entitled.

189.   As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff has suffered damages in the form of unpaid wages, liquidated damages, and other economic losses.

**WHEREFORE**, the Plaintiff, RYAN ALEXANDER KLUNK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GRILLSMITH 105 LLC, d/b/a GRILLSMITH WESLEY CHAPEL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the FLSA by failing to pay Plaintiff for all hours worked;

B.   Award Plaintiff unpaid wages in the amount of approximately $25,900.00, or such other amount as may be proven at trial, plus pre- and post-judgment interest;

C.   Award Plaintiff liquidated damages in an amount equal to the unpaid wages pursuant to 29 U.S.C. § 216(b);

D.   Award Plaintiff his reasonable attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 216(b);

E.   Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law; and

F.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff respectfully requests a trial by jury.

Date this 27th day of August 2025.

*/s/ Jason W. Imler, Esq*

Jason W. Imler

Florida Bar No. 1004422

Alberto "Tito" Gonzalez

Florida Bar No. 1037033

**Imler Law**

23110 State Road 54, Unit 407

Lutz, Florida 33549

(P): 813-553-7709

Jason@ImlerLaw.com

Tito@ImlerLaw.com

Ashley@ImlerLaw.com

Tiffany@ImlerLaw.com
